UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS DELACRUZ,<br><br>  Petitioner,<br><br>  v.<br><br>PAUL THOMPSON,<br><br>  Respondent. | No.  2:21-cv-1821 WBS AC P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner, a federal prisoner proceeding pro se, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  ECF No. 1.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

Before the court is respondent's motion to dismiss the petition.  ECF No. 8.  Petitioner has filed a reply.  ECF No. 9.  For the reasons stated below, the undersigned will recommend that respondent's motion be granted.

I.  RELEVANT BACKGROUND

Petitioner is an inmate who is currently housed at the Federal Correctional Institution – Herlong ("FCI-Herlong").  In October 2020, in the Southern District of California, petitioner pled guilty to importation of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 952 at 960.  He was sentenced to serve 15 months in federal custody, followed by a 36-

////

1

month term of supervised release. He was also ordered to pay a $100.00 special assessment.[1] ECF No. 8 at 2-3 (motion to dismiss); ECF No. 8-1 at 1, 5-6 (criminal case docket).

The Bureau of Prisons ("BOP") records indicate that petitioner's full-term release date is August 21, 2022, and his projected release date is June 15, 2022, assuming he receives good conduct credit.[2] ECF No. 8 at 3; ECF No. 8-2 at 2, 14-16. Respondent states that under the First Step Act ("FSA"), as of January 2022,[3] if petitioner has met certain criteria for eligibility, he will then be eligible to apply any credits he has earned, including earned time credits, towards discretionary pre-release custody. ECF No. 8 at 3. That custody will be determined via a BOP-specific inmate progress and suitability assessment for limited final-months-of-custody placement in a transition location. It is contingent upon availability and resources. Id.

II.   THE PETITION

In a fill-in-the-blank freeform petition, petitioner, an inmate at FCI-Herlong, asks the court to provide declaratory relief that prospectively establishes the earned credit that is to be applied to his future early release date. ECF No. 1 at 1. The petition primarily consists of a narrative identifying the allegedly improper ways that the BOP is applying the FSA which, in turn, slows his ability to accrue earned time credits under the statute that can then be applied towards his earlier release from prison. See generally id. They include respondent purportedly backtracking on representations that earned time credit accrued for early release due to participation in EBRR programing and productive activities, as well as respondent being selective regarding the start dates of credit accrual for certain productive activities. ECF No. 1 at 2.

Petitioner argues that this inconsistent application, as well as the inconsistent, discretionary distinctions the BOP has made regarding programs, programming and productive activities that are eligible for credit under the FSA, violate the Equal Protection Clause. ECF No.

---

[1] The 2241 petition filed by petitioner is not on the court's form. See ECF No. 1. As a result, the offense, plea and sentencing facts are taken solely from respondent's motion to dismiss and its attachments, the latter of which, are readily verifiable. Petitioner does not dispute the offense, plea and sentencing facts in his reply. See generally ECF No. 9.
[2] These dates were projected as of December 2021, when the motion to dismiss was filed.
[3] January 2022 was the deadline to phase in programming and provide EBRR programs and productive activities for prisoners. See 18 U.S.C. § 3621(h)(2)(A).

1 at 3. In sum, petitioner argues that the manner in which the BOP has chosen to interpret and implement the crediting system under the FSA intentionally undermines the law. Id. at 2-4. Petitioner also claims that he is entitled to have any credits he has earned immediately applied towards his early release, instead of waiting until the January 2022 phase-in date. Id. at 4-5.

Petitioner asks the court to issue declaratory relief in the form of an order that: (1) directs the BOP to immediately credit all work and educational programming that he earned after the enactment of the FSA towards his early release; (2) voids BOP directives, statements and handbooks that directly contradict legislative intent, and (3) calculates his days of credit and orders the BOP to apply them towards his early release. ECF No. 1 at 5-6. He contends that because the petition simply asks the court to make a legal determination on a narrow dispute of statutory construction, pursuant to Coleman v. U.S. Parole Commission, 644 F.3d 159, 162 (3rd Cir. 2016), and Fraley v. United States Bureau of Prisons, 1 F.3d 924 (9th Cir. 1991), he was not required to exhaust administrative remedies. ECF No. 1 at 1.

### III. FIRST STEP ACT

#### A. Historical Origins

The First Step Act of 2018[4] was created and implemented by Congress to further criminal justice reform. It is "a remedial statute intended to correct earlier statutes' significant disparities in the treatment of cocaine base (also known as crack cocaine) as compared to powder cocaine." United States v. Wirsing, 943 F.3d 175, 176 (4th Cir. 2019); United States v. White, 984 F.3d 76 89 (D.C. Cir. 2020) (quoting Wirsing). Offenses covered by it are federal criminal statutes that were committed before August 3, 2010, the penalties for which were modified by specific sections of the Fair Sentencing Act of 2010.[5] It was enacted on December 21, 2018.

#### B. Statutory Implementation and Execution

Under the FSA, the Attorney General, in consultation with the Federal Bureau of Prisons and other federal entities, was tasked, in relevant part, to review existing prison risk and needs assessment systems and to develop recommendations regarding evidence-based recidivism

---

[4] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).
[5] Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 404(a), 124 Stat. 2372 (2010).

reduction ("EBRR") programs and productive activities ("PAs") that were the most effective at reducing recidivism. See 18 U.S.C. § 3631(a)-(b). Thereafter, within 210 days of the FSA's enactment,[6] the Attorney General was to develop and publicly release a risk and needs assessment system that would be used to determine the risk of recidivism for each prisoner, as well as the type and amount of EBRR programming that was appropriate for each prisoner, and then assign prisoners to programming accordingly. See 18 U.S.C. § 3632(a)(1), (3). The assessment system developed was also tasked with determining when to provide incentives and rewards for successful participation in EBRR programs and PAs, as well as with determining when to transfer prisoners into prerelease custody or supervised release. See id. at (a)(6)-(7).

Within 180 days of the Attorney General's completion of the assessment system,[7] the Director of the Bureau of Prisons was to implement and complete the initial intake risk and needs assessment for each prisoner; begin to assign appropriate EBRR programs and PAs based on them and expand the EBRR programs and PAs it offered. See 18 U.S.C. § 3621(h)(1)(A)-(B). Thereafter, the BOP was to provide EBRR programs and PAs for all prisoners within two years of the BOP completing the risk and needs assessment for each prisoner.[8] Id. at (h)(2)(A). This was called the "phase-in" period. During this two-year period, which culminated on January 15, 2022, priority for EBRR programs and PAs was given based on a prisoner's proximity to a release date.[9] Id. at (h)(3).

### C. Application of Time Credits

Under the FSA, when a prisoner successfully completes an EBRR program or a PA, he earns 10 days for every 30 days of successful participation. 18 U.S.C. § 3632(d)(4)(A)(i). In addition, if the BOP has determined a prisoner is at a "minimum" or "low" risk of recidivating,

---

[6] The court takes judicial notice of the fact that 210 days from December 21, 2018, was July 19, 2019.

[7] The court also takes judicial notice of the fact that 180 days from July 19, 2019 – the date the Attorney General was to complete the risk and needs assessment system – was January 15, 2020.

[8] The COVID-19 pandemic caused the BOP to limit the EBRR programs offered. See generally Keegan v. Derr, No. 22-00089 LEK-RT, 2023 WL 2403941, at *1 (D. Haw. March 8, 2023).

[9] In addition, priority to EBRR programs was to be given to prisoners with "medium" and "high" risk recidivism assessments, while access to PAs were given to prisoners with "minimum" and "low" risk assessments. 18 U.S.C. § 3621(h)(6).

1    and he has not increased his risk of recidivism over two consecutive assessments,[10] he will earn

2    an additional 5 days of time credit for every 30 days he has participated in EBRR programming or

3    PAs.  Id. at (d)(4)(A)(ii).  Time credit, however, cannot be earned for an EBRR program that a

4    prisoner successfully completed before the enactment of the FSA or during official detention

5    prior to the date a prisoner's sentence began.  Id. at (d)(4)(B)(i)-(ii).  In addition, the time credit

6    awarded for EBRR programming and PAs is to be applied only to prerelease custody or

7    supervised release.  Id. at (d)(4)(C).

8        IV.   MOTION TO DISMISS

9            A.  Respondent's Motion

10   Respondent argues that dismissal is warranted on several grounds: (1) lack of standing and

11   ripeness under Article III; (2) lack of jurisdiction under Section 2241; and (3) failure to exhaust

12   administrative remedies prior to filing the instant petition.  ECF No. 8 at 1-2, 4-7.

13   With respect to Article III, respondent argues that the petition must be dismissed because

14   at the time it was filed, neither petitioner's custodial status nor his custody term had been

15   impacted by any BOP action or theoretical inaction.  ECF No. 8 at 4-5.  As a result, respondent

16   contends, petitioner has no standing to prospectively claim earned time credits under the First

17   Step Act, and the number of credits petitioner claims he is entitled to receive prior to the January

18   2022 phase-in date is speculative.  See generally id. at 4-6; ECF No. 8-2 at 11.

19   Respondent also urges dismissal as a matter of law and for failure to state a Section 2241

20   claim, consistent with Federal Rule of Civil Procedure 12(b)(1), (6) and 28 U.S.C. §§ 2243 and

21   2255(e).  ECF No. 8 at 4-6.  Petitioner's demands, respondent argues, are temporally distant,

22   speculative in nature, and do not establish that any immediate injury would be redressed by the

23   relief requested.  Id. at 6.  In addition, the application of any theoretical decision regarding

24   petitioner's eligibility to receive FSA credits would be entirely discretionary on the BOP's part.

25   Id.  Because the petition is not ripe for review, respondent argues, the court should dismiss it for

26   lack of subject matter jurisdiction.  ECF No. 8 at 5-6.

---

[10]  Risk assessments and level adjustments for prisoners participating in EBRR programming and PAs are to occur no less often than annually.  18 U.S.C. § 3632(d)(5).

Finally, respondent argues that the petition should be dismissed because petitioner failed to exhaust the BOP's administrative remedies prior to filing the petition. ECF No. 8 at 6. Respondent rejects petitioner's claims that he is excused from the requirement because doing so would be futile and that he would be irreparably harmed, arguing that these arguments are unavailable prior to BOP's application of FSA credits. Id. at 6-7.

### B. Petitioner's Reply

Petitioner's reply offers no clear response to respondent's standing argument.[11] See generally ECF No. 9. Instead, petitioner generally references Kelley v. Thompson, No. 2:21-cv-1813 JAM KJN P ("Kelley"), and he asks the court to consider the reply in that action[12] as his reply in this action. ECF No. 9. He also asks the court to "consider the Cazares case from December 2021."[13] Id.

Petitioner does counter respondent's exhaustion argument, arguing that exhaustion was not necessary given the "[BOP's] intractable interpretation of a statute, among other factors." Id. He also reiterates his request for declaratory relief in the form of applying the FSA to his sentence. Id.

### V. DISCUSSION

#### A. Article III Standing

##### 1. Applicable Law

Article III of the Constitution limits the "judicial power" of the United States to the resolution of "cases" and "controversies." Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 465, 471 (1982). "Failure to satisfy Article III's case-or-controversy requirement renders a habeas petition moot." Kittel v. Thomas, 620 F.3d 949, 951 (9th Cir. 2010) (citation and internal quotation marks omitted). The judicial power

---

[11] The reply appears to be another boilerplate document in which petitioner has simply filled in blank spots with information that is unique to him. See generally ECF No. 8.

[12] See Kelley, ECF No. 10 (petitioner Kelley's reply). The court declines to consider the reply filed in Kelley as petitioner's reply in this matter.

[13] Although petitioner provides no citation for Cazares (see generally ECF No. 9), the court presumes petitioner is referring to Cazares v. Hendrix, 575 F. Supp. 3d 1289 (D. Or. 2021). This case addresses similar First Step Act claims and issues.

defined by Article III is not an unconditioned authority to determine the constitutionality of legislative or executive acts.  Valley Forge, 454 U.S. at 471.

Constitutional standing is the threshold question in every case because it determines a court's power to entertain a matter.  Warth v. Seldin, 422 U.S. 490, 498 (1975); Larson v. Correct Craft, Inc., 569 F.3d 1319, 1326 (Fed Cir. 2009) (citing Warth).  It asks the question whether a litigant has made out a "case or controversy" within the meaning of Article III.  Warth, 422 U.S. at 498.  A federal court's jurisdiction can be invoked only when a litigant has suffered some threatened or actual injury resulting from the putatively illegal action.  Warth, 422 U.S. at 499; Polinsky v. MCA Inc., 680 F.2d 1286, 1288-89 (9th Cir. 1982) (citing Warth).  Standing is determined at the time a suit is filed.  Clapper v. Amnesty Int'l USA, 568 U.S. 398, 426 (2013) (citing Davis v. Federal Election Comm'n, 554 U.S. 724, 734 (2008)).

Three elements are needed to establish standing under Article III:  (1) an "injury in fact," i.e., an invasion of a legally protected interest which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of, i.e., fairly traceable to the challenged action of the offender and not the result of the independent action of some third party not before the court, and (3) a likely, not speculative possibility that the injury will be redressed by a favorable decision.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010) (citing Horne v. Flores, 557 U.S. 433, 445 (2009)).  "The party invoking federal jurisdiction bears the burden of establishing these elements . . . with the manner and degree of evidence required at the successive stages of the litigation."  Lujan, 504 U.S. at 561 (citation omitted).

Threatened future harm can, in some instances, confer standing.  However, in such cases, the injury must be "certainly impending" to constitute injury-in-fact; allegations of possible future injury are not sufficient.  Whitmore v. Arkansas, 495 U.S. 149, 158 (1990); Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) (stating challenging litigant must demonstrate realistic danger of sustaining direct injury as result of statute's operation or enforcement).  One need not wait for the consummation of the threatened injury in order to obtain

preventive relief. "Certainly impending" injury is enough. Babbitt, 442 U.S. at 298.

                2. Analysis

The question of standing under Article III is the threshold consideration in any case. In this case, it is dispositive.

Petitioner filed the instant action in this court on September 25, 2021.[14] ECF No. 1 at 6 (signature date on petition). At that time, the BOP was still in the "phase-in" part of FSA implementation, and the BOP had until January 15, 2022, to complete that process. Accordingly, petitioner's argument that the BOP was improperly applying the FSA (ECF No. 1 at 2-4) was premature.

Because time remained under statute in September 2021 for the BOP to complete the FSA phase-in via providing EBRR programs and PAs for the assessed prisoners, petitioner had experienced no injury-in-fact when the instant petition was filed. In other words, he had no legally protected interest that was concrete and particularized and actual or imminent. See Lujan, 504 U.S. at 560. The fact that the petition is largely comprised of boilerplate, and is replete with speculative statements like petitioner's release date "*may* be past *or* [be] in the near future" and "[t]o wait . . . until January 15, 2022 [to apply time credits] . . . would be incredibly unfair" (ECF No. 1 at 1, 4), further supports the court's finding that petitioner had experienced no harm unique to himself in the BOP's implementation of the FSA at the time he filed the petition. These facts also support the court's finding that when the petition was filed, there was no "certainly impending" injury that rose to the level of injury-in-fact.

Without any injury, there can be no standing under Article III and neither the causal connection nor the favorable redress prongs must be addressed. The fact that the BOP has presumably since completed its implementation of the FSA and/or may be improperly applying it now does not affect the analysis. As stated earlier, "[t]he existence of federal jurisdiction

---

[14] The signing date of a pleading is the earliest possible filing date pursuant to the mailbox rule. See Roberts v. Marshall, 627 F.3d 768, 769 n.1 (9th Cir. 2010) (stating constructive filing date for prisoner giving pleading to prison authorities is date pleading is signed); Jenkins v. Johnson, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003), overruled on other grounds by Pace v. DiGuglielmo, 544 U.S. 408 (2005).

ordinarily depends on the facts as they exist *when the complaint is filed*." See Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989) (italics added); Lujan, 504 U.S. at 570 n.4 (quoting Newman-Green, Inc.); Righthaven LLC v. Hoehn, 716 F.3d 1166, 1171 (9th Cir. 2013) (citing Lujan, 504 U.S. at 569 n.4); see also Protectmarriage.com-Yes on 8 v. Bowen, 752 F.3d 827, 834 (9th Cir. 2014) (citation omitted) (citing Spencer v. Kemna, 523 U.S. 1, 7 (1998) and affirming live controversy at time of filing requirement and indicating controversy must exist at all stages of proceedings).

Lack of Article III standing at the time of filing cannot be cured after the fact. See Consumer Fin. Prot. Bureau v. Gordon, 819 F.3d 1179, 1203 (9th Cir. 2016) ("[W]here a plaintiff files a complaint before its asserted injury occurred, it lacks standing even if a sufficient injury-in-fact occurs while the case is pending."); Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198, 1203 (Fed. Cir. 2005). Because ripeness is a constitutional prerequisite for jurisdiction, and it is a question of timing, if a claim involves contingent future events that may not occur as anticipated, it is not yet ripe for judicial review. See United States v. Streich, 560 F.3d 926, 931 (9th Cir. 2009) (citation omitted). For these reasons, petitioner had no standing when he filed this matter, and therefore, it must be dismissed. See Keene Corp. v. United States, 508 U.S. 200, 207 (1993) "[A] federal court may not entertain an action over which it has no jurisdiction." Hernandez v. Campbell, 204 F.3d 861, 865 (9th Cir. 2000) (per curiam) (some citations omitted) (citing Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701(1982)).

      B. Subject-Matter Jurisdiction

         1. Applicable Law

Subject-matter jurisdiction refers to a court's power to consider a case. It can never be waived or forfeited. Adkison v. C.I.R., 592 F.3d 1050, 1054-55 (9th Cir. 2010). Bean v. Matteucci, 986 F.3d 1128, 1132 n.1 (9th Cir. 2021) (citation omitted). A district court has subject-matter jurisdiction to consider a habeas petition that alleges a violation of federal law under federal question jurisdiction. Bean, 986 F.3d at 132 (federal court jurisdiction is conferred by the allegation of an unconstitutional restraint). With Section 2241 petitions, a prisoner may

establish such jurisdiction by showing he is in custody in violation of the laws or treaties of the United States. 28 U.S.C.§ 2241(c)(3); Huante v. Craven, 500 F.3d 1004, 1005-1006 (9th Cir. 1974) (stating custody requirement).

### 2. Analysis

At the time of filing, petitioner was essentially asking the court to order respondent and/or the BOP to comply with the FSA immediately by calculating and applying specific EBRR and PA credits to his sentence. ECF No. 1 at 3-6. However, the FSA guidelines are clear: The BOP was not required to have developed and implemented the FSA until January 15, 2022. See generally 18 U.S.C. § 3621(h)(2)(A). As with standing, subject-matter jurisdiction requires a basic showing of harm, here, facts demonstrating a violation of federal rights. Because the BOP was not required to complete its FSA rollout before January 15, 2022, petitioner was unable to claim a violation of federal right prior to that date. Therefore, at the time petitioner filed the instant petition in September 2021, no actual harm could have existed. Accordingly, this court had no subject-matter jurisdiction over the petition then, and it should have been dismissed at the time it was filed. See Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570-71 (2004) (stating court jurisdiction depends on state of things at time action is brought).

### C. Exhaustion

Even if standing and subject-matter jurisdiction had been proper when petitioner filed the instant petition, the BOP should have been given an initial opportunity to address petitioner's grievances regarding FSA implementation and the awarding (or withholding) of credits. Under the FSA, proper administrative exhaustion requires either: (1) the full exhaustion of all administrative rights to appeal a failure of the BOP to bring a motion on the petitioner's behalf, or (2) the lapse of thirty days from receipt of such a request by the warden of the petitioner's facility – whichever is earlier. See 18 U.S.C. § 3582(c)(1)(A). It is only after one of these events occur that the court is authorized to reduce a petitioner's term of imprisonment.

It is true that administrative exhaustion is not statutorily required by Section 2241 itself. See Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004) (citing McKart v. United States, 395 U.S. 185, 194 (1969)). However, as a prudential matter, the courts require that administrative

remedies in a habeas petition be exhausted, because it is generally more efficient for the administrative process to go forward without interruption than to permit parties to seek aid from the courts at various intermediate stages.  McKart, 395 U.S. at 194; Myers v. Bethlehem Shipbuilding Corp, 303 U.S. 41, 50-51 (1938) ("No one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.").

Furthermore, the FSA's own exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A) is a claim-processing rule that does not permit a district court to excuse a petitioner's failure to exhaust administrative remedies if the failure to do so is properly raised by the government.  See United States v. Keller, 2 F.4th 1278, 1282 (9th Cir 2021) (citations omitted).  The exhaustion requirement is mandatory.  Id.; United States v. Hemmelgarn, 15 F.4th 1027, 1030-31 (10th Cir. 2021) (citing Keller and others); United States v. Kanohokula, 572 F. Supp. 3d 895, 901 (D. Haw. 2021) (citing Keller); Holden, 452 F. Supp. 3d at 973 (stating FSA does not provide court with authority to excuse defendant's failure to exhaust or to waive thirty-day waiting period).  For these reasons, even if petitioner had had standing in this case, the fact that he had not completed the administrative exhaustion process prior to making these arguments still would have prevented this court from considering this matter.  Therefore, respondent's motion to dismiss should be granted.

VI.   PLAIN LANGUAGE SUMMMARY FOR A PRO SE LITIGANT

When you filed your petition in September 2021, the BOP still had time to implement the FSA.  You had not yet experienced specific, particularized harm by the BOP's application of the FSA.  That means you had no standing to file your federal petition when you did.  As a result, the law prevents this court from considering your petition.

Even if you had filed your petition after the BOP had run out of time to implement the FSA, and you had been able to show that you had been directly harmed, the fact that you did not first complete the BOP's administrative grievance process would have also prevented this court from considering your petition.  The law requires that the BOP be given the first opportunity to consider any issues you have with how it is carrying out your sentence.  This court cannot interfere with that process, nor can it be used to sidestep it.

For these reasons, the magistrate judge is recommending that your petition be dismissed without prejudice.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss the petition for writ of habeas corpus (ECF No. 8) be GRANTED;

2. This petition be DISMISSED without prejudice; and

3. The court DECLINE to issue the certificate of appealability referenced in 28 U.S.C. § 2253.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 23, 2023

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE